IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 3:17CR-090-01-HEH |
| | ) | |
| LORENZO COLEMAN, | ) | |
| | ) | |
| a.k.a. "Rock," | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, LORENZO COLEMAN, a.k.a. "Rock," agree that had this matter proceeded to trial, the United States would have proven each of the following facts set forth herein beyond a reasonable doubt.

1. Beginning in or about June 2013, and continuing up through and including February 2015, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, LORENZO COLEMAN, a.k.a. "Rock," did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with others, known and unknown, to distribute and possess with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of Cocaine Hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii) and 846.

2. In 2013, federal, state, and local law enforcement officers became aware of drug trafficking activities taking place in Hopewell, Virginia, and elsewhere in the Eastern District of

1

Virginia, involving LORENZO COLEMAN, a.k.a. "Rock" and others. According to information received, COLEMAN was supplying cocaine hydrochloride and other controlled substances to sub-dealers who were then distributing these narcotics to their customers.

3. On February 12, 2014, February 20, 2014, and March 6, 2014, a Confidential Source (hereafter, CS-1), acting under the direction of law enforcement, made recorded telephone calls to COLEMAN. During each of these calls, the CS ordered one ounce of cocaine from COLEMAN. COLEMAN advised the CS that another individual (identified herein as Co-Conspirator-1) would meet with the CS to deliver the cocaine. Shortly thereafter Co-Conspirator-1 met with the CS at a location set by COLEMAN and provided CS-1 with cocaine in exchange for United States currency.

4. Prior to and after each of these controlled purchases of cocaine, CS-1 was searched by law enforcement for narcotics and United States currency with negative results. After each transaction, the CS immediately returned to law enforcement and turned over the narcotics that the CS had just purchased.

5. The suspected cocaine was then sent by law enforcement to the DEA Mid-Atlantic laboratory for testing. Test results determined that COLEMAN and Co-Conspirator-1 had distributed 28.4 grams of a mixture and substance containing a detectable amount of cocaine on February 12, 2014; had distributed 27.1 grams of a mixture and substance containing a detectable amount of cocaine on February 20, 2014; and had distributed 27.2 grams of a mixture and substance containing a detectable amount of cocaine on March 6, 2014.

6. Co-conspirator-2 was interviewed by law enforcement and advised that COLEMAN was supplying cocaine to various sub-dealers in Hopewell, Virginia, prior to

COLEMAN going to federal prison in February 2015 (for violating the terms of his supervised release). Co-conspirator-2, who made statements against his or her penal interests, advised that in 2013 COLEMAN was providing Co-conspirator-2 with three to four ounces of cocaine every seven to ten days. Co-conspirator-2 further advised that COLEMAN "fronted" the cocaine, and once sold, Co-conspirator-2 then paid COLEMAN for the cocaine. Co-conspirator-2 was able to make larger purchases from COLEMAN as Co-conspirator-2's drug trafficking business grew. Co-conspirator-2 advised law enforcement that he/she purchased half a kilogram (500 grams) of cocaine from COLEMAN on at least one occasion, and further stated that between mid-2013 until February 2015, Co-conspirator-2 purchased 9 ounces (252 grams) of cocaine from COLEMAN every 7 to 10 days.

7. The parties stipulate and agree that COLEMAN and Co-conspirator-2 were involved in the distribution of 13 kilograms of cocaine between June 2013 and February 2015 as set forth in Count One of the pending Indictment.

8. Co-conspirator-3 was arrested in 2014 while in possession of a distribution quantity of cocaine. Co-conspirator-3 agreed to cooperate with law enforcement. Co-conspirator-3, who made statements against his/her penal interests, advised law enforcement that in 2014 COLEMAN was supplying Co-conspirator-3 with ¼ to ½ ounce (7 to 14 grams) of cocaine two to three times per month for six months. Co-conspirator-3 further advised that he/she had acted as a "middleman" at COLEMAN's request, delivering one ounce or more of cocaine approximately 10 to 12 times to other narcotics dealers.

9. The parties stipulate and agree that Co-conspirator-3 and COLEMAN were involved in the distribution of just over 350 grams of cocaine during the time period set forth in Count One of the pending Indictment.

10. Co-conspirator-4 was arrested and agreed to cooperate with law enforcement. Co-conspirator-4 made statements against his/her penal interest and advised that he/she began purchasing cocaine from COLEMAN in late July/early August 2014. Co-conspirator-4 further advised that he/she began by purchasing one ounce quantities of cocaine from COLEMAN two to three times. Co-conspirator-4 then increased the quantity and began purchasing two ounces of cocaine from COLEMAN, and did so on four to five separate dates.

11. The parties stipulate and agree that Co-conspirator-4 and COLEMAN were involved in the distribution of 280 grams of cocaine during the time period set forth in Count One of the pending Indictment.

12. Co-conspirator-5, who made statements against his/her penal interests, agreed to cooperate with law enforcement. Co-conspirator-5 advised law enforcement that he/she had purchased between one and six ounces of cocaine two times per week from COLEMAN for three months period in 2014.

13. The parties stipulate and agree that Co-conspirator-5 and COLEMAN were involved in the distribution of approximately 672 grams of cocaine during the time period set forth in Count One of the pending Indictment.

14. On June 26, 2014, a second Confidential Source (hereafter, CS-2), acting under the direction of law enforcement, placed a recorded telephone call to COLEMAN. During that

call, CS-2 ordered two ounces (56 grams) of cocaine from COLEMAN. COLEMAN called CS-2 back shortly thereafter and told CS-2 where to meet up to complete the narcotics transaction.

15. Prior to and after this narcotics transaction, CS-2 was searched by law enforcement for contraband and United States currency with negative results. CS-2 then traveled to the address as instructed by COLEMAN. Once there, Co-conspirator-6 handed CS-2 approximately 2 ounces of cocaine, and in exchange CS-2 handed Co-conspirator-6 a quantity of United States currency.

16. Immediately after this narcotics transaction, CS-2 met with law enforcement and turned over the suspected cocaine. The purchased narcotics were then sent to the DEA Mid-Atlantic laboratory for testing. Test results determined that COLEMAN and Co-conspirator-6 had distributed a mixture and substance containing a detectable amount of cocaine, with a net weight of 55.7 grams.

17. For purposes of relevant conduct, the parties stipulate and agree, that COLEMAN knowingly, intentionally, and unlawfully distributed and conspired to distribute with others, known and unknown, 14.9 kilograms of cocaine from in or about June 2013 up through and including February 2015, as set forth in Count One of the pending Indictment.

18. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

19. The actions of the defendant as recounted herein were in all respects knowing and deliberate, and were not committed by accident, mistake, or other innocent reason.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

Date: 8·15·19  By: _____
Angela Mastandrea-Miller
Assistant United States Attorney

After consulting with my attorney, and pursuant to the plea agreement entered into this day between the defendant, LORENZO COLEMAN a.k.a. "Rock," and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved each fact beyond a reasonable doubt.

Date: 8/15/19  By: _____
Lorenzo Coleman
Defendant

I am counsel for LORENZO COLEMAN, a.k.a. "Rock." I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 8/15/19  _____
J. Paul Gregorio, Esq.
Counsel for Defendant