IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| | ] |
| v. | ] Criminal No. 3:17CR09-001 |
| | ] |
| LORENZO COLEMAN, | ] |
| a.k.a., "Rock" | ] |
| | ] |
| Defendant. | ] |

**DEFENDANT'S OBJECTIONS**
**AND**
**POSITION WITH RESPECT TO SENTENCING FACTORS**

COMES NOW the defendant, LORENZO COLEMAN, by counsel, and states that both counsel and the defendant have received copies of the pre-sentence report (PSR), have reviewed the report and have the following objections to the report:

**Role in the Offense – paragraph 17:**

The defendant objects to the four-level enhancement for role in the offense pursuant to U.S.S.G. §3B1.1(a). The defendant does not feel that the four-level enhancement is justified based on the criminal conduct in this offense.

As can be seen from the information contained within the PSR, the defendant and two co-defendants were charged with a Conspiracy to distribute 5 kilograms or more of Cocaine Hydrochloride; Distribution of Cocaine Hydrochloride; and Aiding and Abetting. The information contained in the Statement of Facts is outlined in Paragraph 14 of the Pre-sentence Report (PSR). There is little question that the defendant and his co-conspirators engaged in conduct that resulted in the purchase and re-distribution of cocaine hydrochloride in and around

1

the Hopewell and tri-cities area.

The nature and extent of the defendant's involvement in the drug conspiracy consists of the defendant selling cocaine directly to individuals who further distribute cocaine to end users. On occasion, the defendant would take calls from potential drug purchasers and direct them to a location where they would meet with an individual who would supply them with the drugs they requested. The individual who met the potential drug purchaser was directed to do so by the defendant. It is suspected that this form of distribution was utilized by the defendant in an attempt to shield the defendant from possible arrest or identification by law enforcement.

According to the PSR and Statement of Facts (SOF), individuals were utilized by law enforcement to contact the defendant to set up drug purchases. These individuals, referred to as a Confidential Source or CS, were working on behalf of law enforcement in an undercover capacity. In this capacity, they are considered to be akin to law enforcement and not "participants" as it relates to the enhancement for leader or organizer.

The conspiracy in which the defendant was involved included the defendant and two main participants. These participants included his two co-defendants who are referenced in the SOF as Co-conspirator 2 and Co-conspirator 3. These individuals had direct dealings with the defendant in the form of making purchases of cocaine over the relevant time period. Their involvement with the defendant was not otherwise extensive and did not involve decision making authority; they were not recruited as accomplices; they each claimed the right to the share of profits from the sales of drugs that they made individually. They did not pool or combine resources or proceeds to further the purchase of drugs; there was no heirarchy among or between these individuals; the only planning involved was the contact made to arrange drug purchases and

sales between the individuals; and none of these individuals exercised or exerted control over the other.

The only individuals that were brought into the conspiracy were those who delivered drugs at the request of the defendant as outlined in paragraph 14 (3) of the PSR. This person was involved in the conspiracy for the limited purpose to deliver drugs to the CS. This is conduct that is found to exist in the normal course of a drug conspiracy and a method of delivery or sale of drugs. It is neither unusual or in any extensive.

The number of participants in this conspiracy is questionable. The actual members of the agreement to buy and sell drugs involved three individuals – the defendant, and his co-defendants Vernon Boone and Travis Williams. These co-conspirators acted independently of one another other than for the purchase of drugs. They had their own network of customers, determined their own prices, separated and packaged the drugs based on the market in their geographical area, and made contact for re-supplied on an as needed basis without any ongoing agreement or understanding. Each co-defendant had other sources of supply independent from one another. The remainder of those involved were individuals who solely made purchases from the defendant in amounts that were not nearly as significant as his co-defendants. These individuals were not directed by the defendant. They were not recruited by the defendant. They did not share in the proceeds of the illegal activity. They were not involved in any planning or decision to purchase drugs. They were not subject to any exercise of control by the defendant. These individuals merely purchased drugs from the defendant for personal use or further distribution.

The only aspect of this drug conspiracy that could be considered "otherwise extensive" is the amount of drug distributed over the twenty-eight month period outlined in the Indictment.

There was 14.9 kilograms of cocaine distributed from June 2013 through February 2015 and February 2016 through May 2017. This calculates to just over 500 grams per month during this relevant time period. This is not overly extensive in any manner. The defendants did not operate in an open air drug market, did not sell from corner or well known neighborhood locations, or otherwise advertise their product for sale. A person had to seek out the defendants in order to make contact to purchase drugs from them.

There is no evidence that these defendants did anything other than wait to be contacted by local individuals that wanted to purchase drugs within the isolated community of the City of Hopewell, Virginia. Just because the defendant was prolific at this illegal activity, does not mean that the criminal activity was otherwise extensive in any manner.

Consumed within any drug conspiracy is the procurement of drugs. That is the primary requirement in order to further the distribution network and conspire with others to sell drugs. In this instance, there were no steps taken to procure drugs that could be considered to be otherwise extensive. There were no boats, planes, buses, cargo vessels, secret compartments within automobiles, trips to states known for drug distribution, no secret identities utilized, no strawman used to make purchases, no stash houses, no surveillance cameras used, no false identifications, no multiple locations/houses, no firearms, no violence, or other extensive steps taken by the defendant to complete the drug distribution conspiracy. It was somewhat limited in geographical area, location, and individuals involved and not otherwise extensive.

"In order to qualify for an enhancement, the defendant must have been the organizer or leader of one or more other participants." *United States v. Cameron*, 573 F.3d 179, 184 (4th Cir. 2009). "Merely "being a buyer and seller of illegal drugs, even in league with more than five or

more other persons, does not establish that a defendant has functioned as an organizer, leader or manager, or supervisor of criminal activity. *Id.* At 185.

Although the defendant acknowledges that his conduct was illegal, involved the purchase and re-distribution of drugs, he denies that he exercised any role as an organizer, leader, supervisor or manager over any other person that was involved in the conspiracy.

The defendant objects to the four-level enhancement under U.S.S.G. §3B1.1(a).

**General Factors as to the Defendant's Position with respect to Sentencing Factors**

Pursuant to 18 U.S.C. §3553(a), the Court should impose a minimally sufficient sentence to achieve the goals of punishment, deterrence and to protect the public. The factors outlined in 18 U.S.C. §3553(a) should be addressed and considered by the Court before imposition of sentence.

**Nature and Circumstances of the offense** – The nature of the offenses of conviction include Conspiracy to Distribution Cocaine; Distribution of Cocaine; and Aiding and Abetting. The defendant and his co-defendants purchased drugs from various sources and sold the drugs to others for re-distribution and/or personal use. This activity occurred from June 2013 through February 2015 and September 2016 through May 2017.

2. **History and characteristics of the defendant** – As can be seen from the report, the defendant's early family life had a direct, adverse impact on the development of the defendant. The defendant's parents resulted in a negative impact on him during earl formative years. The defendant's father was a regular drug user and oftentimes was not at home and absent from the defendant's life. The defendant's mother had a dependence on alcohol and was known to be an

alcoholic who regularly struggled with alcohol her entire life. Both of the defendant's parents constructive abandoned him early in his life. The defendant was initially back and forth between his parents and his grandmother's home. This had a negative impact on the defendant and his early development. Eventually, the defendant went to reside with his grandmother where he spent most of his formative and teenage years. The impact of this abandonment reared its ugly head in the defendant's early teenage years.

Due to the lack of supervision and lack of any type of family life, other than his grandmother, the defendant quickly drifted into a world that he observed around him. This world consisted of drugs, alcohol, and crime. Between the ages of 16-21, the defendant was arrested numerous times and convicted of two drug offense, DUI, A&B, possession of marijuana, and Obstruction of justice. At age 17, the defendant felt the impact of his conduct when he was ordered to serve a jail sentence on two different occasions. At age 18, the defendant was adjudged a felon due to a drug offense (cocaine).

Over the next fifteen years of his life, from age 21-36, the defendant continued to incur new arrests, convictions, jail sentences, probation sentences for offenses related to drugs, alcohol, and driving offenses. The defendant's life quickly began to unravel into a life of criminal conduct.

A possible contributing factor to the defendant's criminal conduct was due to the fact that the defendant was evaluated at age 14 and determined to be "educable mentally retarded." As a result of this difficulty and diagnosis, the defendant was labeled as a Special Education student and had an Individual Education Program (IEP) to assist with his learning difficulties. Despite these learning difficulties, the defendant somehow managed to graduate from high school with an

IEP Diploma.

It is suspected that the defendant was simply pushed through his classes by staff and permitted to graduate with a Certificate of Attendance. As can be imagined, the defendant must have experienced difficulty in navigating school, relationships with his peers, had limited resources, had limited experience, and it was overall a horrific experience that he somehow endured.

To no surprise, the defendant began to become involved in criminal activity shortly before and at the time he turned 18 years of age. The defendant began to do what he saw around him. He simply attempted to mimic the behavior he observed which involved illegal activity related to drugs.

The only type of employment the defendant obtained was menial at best. He was a laborer, car washer, car detailer, dishwasher, and bought and sold cars when he was older. Most of these jobs were individual in nature where the defendant was not forced to interact with the general public or an employer who required him to follow a schedule or rules. The defendant did much better when he was able to work for himself. This allowed him not to have to reveal his learning difficulty, lack of education, lack of skills, lack of understanding, and general frustration in life.

Despite this horrific upbringing and childhood, the defendant somehow learned to cope with his learning disability, learned to read and write, learned to effectively communicate with others, which enable him to have meaningful relationships with his former girlfriend and their two teenage children, his current girlfriend and their three year old. Both report that the defendant helped raise his children, maintains a good relationship with his teenage sons, and

helped out when he was not incarcerated. His current girlfriend also reports that the defendant is an excellent father when he is around.

3. **Need to punish defendant** – There is clearly a need to punish the defendant for his involvement in the instant offenses. The defendant's conduct appears to be the product of a devastating childhood, feelings of abandonment, anger, anxiety, lack of family structure, depression, feelings of inferiority, and being a product of the neighborhood where he lived and the criminal justice system where he was raised as a young child into adulthood. The defendant has a long criminal history that dates back to his teenage years that involves drugs, alcohol and driving offenses.

4. **Need to deter criminal conduct** – There is a need to deter similar criminal conduct of the defendant or others who commit similar offenses. However, a lengthy period of incarceration alone will not act to deter any future criminal conduct of the defendant. A period of incarceration that is long enough to make the defendant understand that upon release he must comply with the conditions of his sentence and supervised release is sufficient to achieve the sentencing goals outlined in the statute. Any sentence imposed that is greater than necessary would only result in a point of diminishing returns and would not realize the effect that a sentence of incarceration is supposed to achieve.

5. **Need to protect the public** – There is a need to protect the public from the defendant and others who engage in this type of behavior. An effective way in which to protect the public would be to educate the defendant about his behavior and provide him with the opportunity to understand his behavior. The defendant has previously availed himself to programs available to

him while incarcerated. Once the defendant is better able to understand how he acts, why he acts in that manner, then and only then will he be in a position to be able to make the necessary changes to that behavior.

6. **Need to provide rehabilitation** – The need to provide rehabilitation in the form of education, training, skills and counseling is strong under these circumstances. The defendant has never been afforded the opportunity to walk through the experiences that a normal, well-adjusted adult would otherwise have afforded to him. This is primarily based on the abandonment he experienced in his childhood along with his learning disability. This absence or lost youth has had a damaging and detrimental impact on the defendant and his ability to understand how to act and behave. The defendant became incarcerated at the early age of 17 and quickly became indoctrinated in the world of incarceration which taught him how to survive. However, it apparently failed to teach him how to become adjusted into a world without drugs and alcohol.

The defendant needs to learn how to manage his emotions, how to make better decisions, how to properly interact with people in an environment where he is not being told where to walk, when to eat, when to sleep, where to be at any given time. Unfortunately, the defendant never learned these simple things that others experience and never think about due to his incarceration at an early age.

Counseling, education, and therapy may be the best course of action for the defendant. This will provide him with the opportunity to learn skills that he can use in everyday life that escaped his upbringing and formative development.

7. **Need to avoid unwarranted sentence disparity** – The crux of the guideline sentencing range is driven by the defendant's past criminal history and the drug weight involved

in the overall conspiracy. A sentence that takes into account all of the problems that the defendant was forced to experience at a young age, the previous periods of incarceration that he served, the tremendous impact that those periods of incarceration had on the defendant, the lack of education, lack of skill and experience that avoided the defendant, all should be considered in fashioning a fair sentence to be imposed for similarly situated defendants.

8. **Reasonableness of sentence** – A sentence imposed that is consistent with other defendants charged with similar conduct, under similar circumstances, with similar backgrounds, and all other things being equal, would be considered to be reasonable. The defendant requests that the court impose a sentence that is both reasonable and necessary to achieve the goals of sentencing. The defendant submits that a sentence at the low end of the range would serve to achieve those purposes.

                                                Respectfully submitted,
                                                LORENZO COLEMAN

By:       /s/
          J. Paul Gregorio

J. Paul Gregorio, Esquire (VSB#39829)
INNSBROOK LAW GROUP, PC
11539-C Nuckols Road
P.O. Box 4170
Glen Allen, VA 23058
(804) 935-3090
(804) 935-3091 fax
Counsel for the defendant
pgregorio@innsbrooklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2019, I sent by electronic filing a true

and exact copy of the foregoing pleading to the Clerk of the U.S. District Court and to the following persons:

Assistant U.S. Attorney, Angela Mastandrea-Miller, 919 East Main St, Ste 1900, Richmond, VA 23219

/s/
J. Paul Gregorio, Esquire (VSB#39829)
INNSBROOK LAW GROUP, PC
11539-C Nuckols Road
P.O. Box 4170
Glen Allen, VA 23058
(804) 935-3090
(804) 935-3091 fax
Counsel for the defendant
pgregorio@innsbrooklaw.com